Buckner number 17-11082. May it please the court, Kurt Obrant with the law office of Obrant Corrie. I was appointed by the court for purposes of Mr. Buckner's direct appeal. As the court is aware Mr. Buckner is appealing a life sentence he received following trial on charges of aggravated sexual battery on his daughter, a minor, following a two-day trial. What I'd like to focus on first is our first issue that we raised in our brief which was whether or not there was an abuse of discretion by the district court in denying Mr. Buckner's motion for continuance. And in that vein I would note that on September 7, 2016 on a cruise ship after having revealed to her mother that she had been sexually abused by her father, she was 14 at the time, since she was 12 her mother in turn reported it next day to the cruise ship authorities and he was taken into custody. The calendar call was on August 30th, the following month, and he, Mr. Buckner, was not brought over to court following his second suicide attempt. Apparently he had tried to commit suicide on the cruise ship after being arrested and again while he was in custody here at the Federal Detention Center. So the court reset the calendar call for I believe it was two days later or on September the 2nd. At that time his attorney, his first attorney, because he had withdrawn following the trial and the second attorney was appointed for sentencing and I was appointed for purposes of the appeal. But his first attorney, the trial attorney, had advised the court or requested rather that he his client have a competency evaluation which was ordered. And normally they take 60 days. The trial was set. The forensic evaluation was not completed in that period. The psychologist requested a 15-day extension which was granted and then a new trial date was set in December. On December the 7th, which is the Wednesday before the trial started, and I think this is the critical day that I'm kind of getting to, on December the 7th, which was a Wednesday before the Monday of jury selection, he was found competent and counsel at the time that the trial counsel for Mr. Buckner had candidly he told the court that he had not prepared for trial pending his client's psychological evaluation and competency determination. And mind you, we're on the Wednesday before the Monday of jury selection and the court denied it. And I think what is interesting is the government even on their own suggested to the court what they called in the transcript a compromise and suggested to the judge that he grant a 9-day extension because that was their suggestion and notwithstanding their suggestion, and I think it was certainly a good suggestion and I think objectively in this record there's evidence to support why that was a good suggestion. And specifically with respect to now in retrospect reading the record and going through the process of determining what, if anything, may have been done differently as the case law indicates. Specifically during the trial, during the critical portion of the trial, one of the two 413, 414 witnesses regarding other similar type misconduct, which was actually Mr. Buckner's younger brother. His younger brother, yes. Oh, the younger brother. Yes, yes. I thought you were talking about the other one. Yeah, and then there was his niece, which was the second one. But the critical thing, the revelation of why I think this record shows objectively that there was prejudice when counsel said I haven't prepared for trial was when the government had elicited the testimony from his little brother that he had apparently done similar bad acts to other children that he was babysitting. And the lawyer said on the record we were never provided that in discovery. He said first we moved in limine to exclude it altogether, just generically, and now I learned for the first time in the middle of trial that his brother in the statement he gave to the police when he testified to on trial, which also goes into our second issue, which is the misdraw motion, because they had asked him about the dynamics of what was going on with Mr. Buckner. And he responded he was also doing it with other children. Objection, sustained disregard. Then the government, if you recall from the transcript, asked another question, which I would submit was reasonably calculated, or should have been reasonably calculated to elicit an improper response. I think when you read it, I think another fair interpretation of it would be, and maybe a better interpretation, would be that they asked the second question to emphasize the fact that he hadn't actually seen anything. In other words, that he didn't really know. He had no personal knowledge to try to clean up anything that had happened from the other. I mean, that's how I understood it. Well, the way I read it, Judge, and I think even the government at sidebar when he was making, Counselor Mr. Buckner was making the mistrial motion, said that maybe there was some type of mistake or words to that effect in the way the second question after the first sustained objection was not only sustained, but they were told to disregard it. Just ask an open-ended question as a follow-up to your last question about what he was doing with other children. Of course, the response was, yes, that's what he told me. But in any event, that's when... Well, I mean, the second question was, did you actually see any of this? And he said, no. And then he added, but I heard about it. Yeah, that he had told me that. Yeah, so I think that it's reasonably predictable that if you ask a question like that as open-ended following a sustained objection, that the response is going to be in that genre, which it was. But looping back to the continuance, because these are two overlapping factual scenarios that take place, but two separate issues, which is the denial of the mistrial and the denial of the motion for continuance. At that time, as I said, the counsel for Mr. Buckner said he had never been provided this in discovery. He had no idea that the brother had made a statement about other children and the government, and correctly so, had shown the judge the bait stamp numbers and read into the record exactly what was provided in discovery. And that's indeed what was provided and what was said by his brother. My point is, then, that's objective evidence that he wasn't ready. I mean, that is a critical point in this trial. He only moved, really, for two major in limine issues, which is the 413-414 as to the brother and as to the niece. And he certainly could have, would have, and I think any reasonable interpretation is if he had known. Now, he didn't know. And I think the fact that he didn't know this critical, crucial piece of evidence of discovery that was provided to him in trial, and he was shocked to have seen it, at least what he thought for the first time when this mistrial motion was made and the testimony was revealed, I think is indicative of the fact that he wasn't prepared for trial. I think that's objective evidence, and that he would have and could have moved in limine. And I would suggest had he moved in limine as to don't allow the government to introduce any evidence of unknown other children he was babysitting for, it certainly would have been granted as the objection was sustained and the jury was struck and disregarded. That request wasn't made because he didn't know. And he didn't know, I would submit, because he candidly told the court, I don't have enough time because I didn't prepare during the 75-day competency evaluation. He was only declared competent the Wednesday before the Monday of jury selection. Additionally, the Supreme Court in Unger versus Sarafat said there is no mechanical test to determine if there's a due process violation. I understand that there was some tension between Verduram and Valadares where the Verduram case didn't specifically say there was specific identifiable conduct that was introduced by the appellant. And of course, this court said, well, under the prior panel precedent rule, unless it's an en banc express reversal and or a Supreme Court reversal, that the prior 11th Circuit panel opinions would stand. And that's true. Also, that court said even if implicitly they overruled the decision in Verduram, the court would still be bound to follow prior precedent rule. And I can see that's true, too. But if you look at it in context of what the Supreme Court said, there's no mechanical test. You have to look at the specifics of every case. And here we have a gentleman that had psychiatric problems that are noted. Suicide attempts. His lawyer candidly admitted he didn't prepare for trial. Can I ask you a question about that? Is there like a pretrial order that directed that all pretrial motions be filed by a certain date? I believe that there was. I believe that was in the standard discovery order. And would that have been prior to the date that they were supposed to be filed? Would that have been prior to the calendar call that resulted in the trial be, I guess, the December 7th calendar call? Well, what I think happened is that the first calendar call, and if I'm not mistaken, that was August 30th, 2016, he wasn't even brought over because there was another second suicide attempt. And so then that calendar call got reset, as I understand it, for a second one, which was two days later on September 2nd. At that point, counsel moved for a competency evaluation, which the court ordered, and of course set the case 60 or so days out, but that it wasn't done in time. And so we didn't get back to a calendar call the same day as the hearing on the competency, which was the Wednesday before the Monday of jury selection. The government suggested as a compromise a nine-day continuance. We suggest that it should have been granted. It was reasonable. Everybody was in agreement for good reason on this record. And I think now, looking back in retrospect, what I would consider an important piece of damning evidence, because this is a case where it's pretty much a foregone conclusion. It carries a life sentence, even for a first-time offender, which he is, and he did get life, which I think even the lawyer argued, this is something that my client is facing a minimum of 30 years to life. We need more time. I think in this situation, it wasn't an abusive aggression. Thank you. Thank you. And you've reserved five minutes. Thank you, Your Honor. Good morning. May it please the court. Jason Wu on behalf of the United States. With me at counsel table are AUSAs Maria Medidis and Jonathan Kabrinsky, who tried the case. The facts of this case speak for themselves. Travis Buckner raped his daughter for years, acts which were reprehensible, remorseless, and consistent with a pattern of abuse that he inflicted on two other relatives. And he has not identified any errors, either today in argument or in his briefs, which justify reversal. He focused on the continuance, so I'll go there first. And I'm going to mostly, I don't want to repeat what's in the briefs already, but I want to focus on how the record belies his claim that his counsel was unprepared. And I point the court to three parts of the record. The first is the December 9th status conference that immediately preceded trial. And just so we're clear on the timeline, this is a few days after Mr. Buckner was found competent and after the request for the continuance was made and denied. In that status conference, which concerned Mr. Buckner's satisfaction with his counsel, counsel said the following thing. This is Docket Entry 107 in page 5. Quote, I went to see Mr. Buckner yesterday at the Paul Ryan Detention Center and spent many hours with him, talking not only about the letter, but going over all the discovery, discussing my plan for to defend him next week and the evidence the government had and what I thought the government was going to argue. And by the end of the time we spent together, it was probably maybe close to four hours, Mr. Buckner actually apologized to me for sending the letter and said he was going to today ask the court to leave me on the case so I can represent him next week, end quote. So I think that goes to the point that although he initially claimed that he had not had adequate time to prepare his client or to review discovery with his client, that had been done before trial. The second part of the record that I'll point the court to is his cross-examination of his younger brother because that was the focus of his argument, that he was not prepared to meet the claims of the younger brother. And if you look at docket entry 117 at pages 324 to 27, there's something interesting about that. He actually has a pretty effective and pretty detailed cross-examination on two issues. The first is he points out the brother at one point in his life apparently was a paranormal investigator. That was a fact unknown to the government, which demonstrates independent investigation by the defense. And the second part of his cross-examination concerned the fact that the younger brother had told Mr. Buckner, the defendant's wife, before their marriage about the abuse. In other words, that he had disclosed this to the wife and the wife had married Mr. Buckner anyways. And that was in the discovery, the very discovery document that he claimed not to have received or not to have adequately reviewed. So again, it shows that he has reviewed that discovery. On a related note, in the third final part of the record that I want to make very clear is the timeline of this case. I believe opposing counsel may have inadvertently said that the case was initiated in September of 2016. I think he meant July because it was initiated in July. The indictment, in fact, was on July 22, 2016. And I think it was inadvertent because he then mentioned procedures that happened in August. But the timeline matters, of course, because in August 12, 2016, the government has already provided its second discovery response, which included the FBI 302 report of the younger brother's statement. And so by August 22, 2016, which is more than 100 days before trial, Mr. Buckner objected to that 413, 414 evidence. And on September 2, 101 days before the trial, he moved in Lemonade to exclude it. And again, that goes to show this was not something that was a surprise to him or a witness that he was truly unprepared for. This was, you know, in other words, not trial by ambush. This is more akin to running the ball up the gut from your own 20-yard line all the way to the end zone. This is something that he should have seen a long way coming. I'll finally note, in discussing the law, he contrasted the Valadares and Verderame case. And Verderame, of course, was the case where this court did find that the denial of a continuance prejudiced the accused. However, there are a few salient distinctions that render that case an apposite. The first, again, is the timing. In Verderame, this court pointed out and emphasized how short the time was between the superseding indictment and the trial. In that case, it was 34 days. And of course, in those 34 days, the government continued to provide discovery until the very eve of trial. In our case, in contrast, there were 143 days between the indictment and the trial. 101 days, as I mentioned before, between that motion in Lemonade about the 413 witnesses in trial. And there was more than a month that passed between the final small amount of discovery the government provided on November 4th and trial. Moreover, in Verderame, what you had there was a relatively complex financial case where the linchpin of the case was the need to cross-examine a witness who was going to go over tax records or financial records. So at the very least, the defendant in Verderame was able to show that there was specific substantial prejudice because he had not been able to review all those records himself and comb through them and adequately be prepared for cross-examination. Here, in contrast, Mr. Buckner has not even pointed us to an area of cross-examination or an area of defense evidence that he would have been able to identify or that he would have raised before the court to his benefit. And that's the key in the case law. Moving on, if the court has no further questions, Mr. Buckner briefly touched on the missed trial issue and Judge Rosenbaum, you got it absolutely right. When you look at the record, the sequence of questions clearly shows first, an entirely appropriate open-ended question that elicited an unexpected response. And then an attempt by the government to clean up the record. And in fact, you'll probably see the question is quite leading. It's about as leading a question and maybe even just an outright leading question as you could get on a direct examination. Counsel asked, you didn't see him abuse anyone else, right? And that was an attempt to clean up the record. Counsel made that clear in the sidebar. And in fact, the court agreed that the information the government was attempting to elicit, which was other psychological tactics used by the defendant, were entirely appropriate. If the court has no further questions, the government respectfully requests that you affirm Mr. Buckner's convictions and his sentence. Thank you, counsel. Thank you. Mr. Obron. Just as to the timeline, I thought I said July the 11th, 2016. He was arrested on the cruise ship if I called it September. Well, the first court date, and I did mention, was August 30th, which brings us to the timeline. In any event, I think that, and as I stated earlier, when you look at the specific facts of this case and following Unger and there being no mechanical test, I think that objectively, where you have somebody with mental health issues, that there was a delay due to suicide attempts. Except that it turned out that he was malingering. It seemed pretty overwhelming evidence that he was malingering and he didn't really have a competency problem. That is what the court found and that is what the psychologist put in his report. However, the psychologist also did put in the report that there were multiple mental health issues that he was being treated and getting medication for. Whether or not he was exaggerating, as the report found on his test, which was administered at the BOP, he certainly had a history of mental health issues and was getting treated. He had, at least that we know of, two suicide attempts since he was arrested on this case. The attorney said that he wasn't ready. Counsel had argued, well, if he wasn't ready, then why on the Friday, which was two days after the Wednesday that we're talking about where he was found competent and the motion for continuance was made and denied, where the government had suggested the compromise of nine days, that was because the court said, and this is also in the transcript, that after he got back to chambers following the denial of the motion for continuance on the Wednesday, which was the seventh, he saw there were two letters written by Mr. Buckner essentially stating there's disharmony between him and counsel, that he's only seen him four times since he was arrested and wanted new counsel. So the court then called the parties back Friday, two days later, where his attorney said, well, I went to see him yesterday, spent four hours with him and everything's fine now. He doesn't want to terminate my representation. So that was it. I don't think that there's anything that could be read into that to somehow dilute the fact that he wasn't ready for trial as he articulated on the Wednesday before. As far as the mistrial motions go, again, and we've set our position, we read it as the way the second question was asked following the first sustained objection and instruction to the jury to disregard it, that it was objectively reasonable that it would elicit an improper response in violation of the prior sustained objection. Thank you. Thank you, counsel. And I note that you were appointed. And I just want to, on behalf of the panel, thank you very much for your efforts in this case. We really couldn't do this if we didn't have people like you who are willing to accept the appointments. Thank you, Judge.